C. T. TUCKER V. THE STATE.

No. 21514. Delivered April 9, 1941.
Rehearing Denied May 28, 1941.

The opinion states the case.

*Alex P. Pope,* of Tyler, and *Howard Edwards,* of Mount Vernon, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State, on submission.

GRAVES, Judge.

This is the second appeal of this cause. The former appeal, which was a death sentence, will be found reported in 137 Texas Crim. Rep., 112, 128 S. W. (2d) 402. Upon a conviction in this cause, the jury awarded appellant a life term in the penitentiary.

In the former appeal the facts were not set forth to any great extent, and we will therefore give a short résumé thereof herein.

Irene Tucker was the daughter of appellant, and was fifteen years old at the happening of the matters hereinafter set forth. In June, 1938, Irene had five sisters, and her mother, father and these sisters came to Smith County, Texas, near the town of Bullard, to engage in berry picking. They lived in a trailer attached to their automobile. In June a carnival came to Bullard, and Irene and her older sister Ruby were attendants thereat on a certain night. Appellant, their father, at such time, approached two negro men, Young Johnson, a man sixty years old, and Sam Moseley, about fifty years old, and asked them if they would like to have some fun with some white women. It seems that the negroes first demurred, but finally agreed to his proposition. Appellant, his wife and the two girls ,one fifteen and the other eighteen years old, drove down the road a short piece and picked up the two negro men, who got in the back seat of the car with the two girls. When the car had been driven some short distance from town, the appellant stopped the same, and told Johnson,

the smaller and older negro, to be easy with the younger girl; that it was her first time out. The girls and the negroes got out of the car, each girl carrying a quilt, and went into a near by field, Irene with Johnson and Ruby with Mosley, and each laid down on their quilt near each other. At this point the testimony takes a peculiar turn. The girl Irene, when placed upon the stand by the State, denied that she had an act of intercourse with this negro Johnson at the time laid in the indictment. She admitted that she had told the grand jury sometime in July of 1938 that she had such an act, and that she had signed a statement to that effect, but steadfastly maintained that such a statement was a lie. It also appears that this witness, on the day previous to this trial, had told the district attorney, in the presence of other people, that she did have such an act of intercourse with this negro man, and her excuse for the change in such testimony was that she was not swearing then, but was swearing at the time she was on the witness stand. She was then questioned rather closely in regard to a statement theretofore made and signed by her, which statement reflected much damaging testimony to appellant's cause, and she admitted having made such statement, but said the whole thing was a lie. Most of the statement, so she said, was a lie, and was probably caused by a promise, or intimation at least, that she would not have to go to the State home for delinquent girls. The girl also testified that she did not want to see her father prosecuted.

The next witness used by the State was the negro Johnson. His testimony set forth the conversation with the father, his hesitation, and final agreement, the trip down the road, the statement by appellant advising him to be easy with the young girl, it being her first time out, his trip into the corn field with the little girl carrying a white quilt, his holding the girl's hand, the girl telling him to be careful. He then continues that he paid the girl seventy-five cents, and left without any attempt upon his part to have intercourse with the girl, giving the reason that he was scared. He was later picked up by appellant and brought back to town. The State seemed to have a signed statement by Johnson, also, in which statement it might be inferred he had made some different statements to the one herein testified to. He gave as his reason therefor that he did not know what he was doing at the time he was before the grand jury because of a beating he had previously received from some persons whose names were to him unknown.

It is evident from the above synopsis of the State's opening testimony that some one had surely dealt rather lightly with the truth, either before the grand jury or before this trial jury.

The next State's witness was Ruby Tucker, the then seventeen year old daughter of appellant. She details the trip with her father and mother, the encounter with the two negro men, the trip into the field, each girl carrying a quilt, and the lying down of the girls, each near the other, each with a negro man beside her, and we quote her testimony at this point:

"Yes, Irene carried some kind of blanket up there with her. She used that blanket. She used it to lay down on. Yes, someone laid down there with her. Yes, it was one of those men that came in the car with us that laid down there with her. Yes, it was one of those negro men. I don't know how far they were from me. They were about as far from me as from here to that door over there. No, it wasn't any further than that. No, I wasn't any further from them than from me to the door of the district clerk's office. Yes, I saw the negro man lay down there with her. I don't know how long they stayed there. Yes, I heard my sister say something. Yes, that was while she and the man were laying there together. She said get up you are hurting me. Yes sir, I heard her tell that negro man 'get up you are hurting me'."

Again we quote from her testimony:

"Yes, my father told me that he had some dates for us. When me and Irene and the negroes got out of the car and started off up there I don't know whether papa told one of these negroes to be careful with the little girl or not. No sir, I didn't hear that. No, I didn't hear him tell the negro to be careful with the little girl that this is her first time. No sir, I did not hear him tell the negro that. Yes, the next morning I saw Irene's underclothes that she was wearing that night. Yes, there was something on them. It was blood. I don't remember whether Irene said anything to me about that blood or not. Yes, Irene complained to me some the next morning. She complained to me the next morning about being sore after we were out there on that road that night. Yes sir, that was at the time I saw the blood on her underclothes."

We also quote from the testimony of Mrs. Goldie Winfrey, who was the wife of appellant at the time inquired about herein,

but who had divorced him and was married to another at the time of this trial:

"That is right, when we left the carnival grounds me and Mr. Tucker and the two girls were in the car together. Mr. Tucker was driving the car, C. T. Tucker. Yes, Mr. Tucker picked up some other passengers on that trip, he picked up two negroes. They were men. They were picked up not hardly a quarter of a mile from the carnival grounds. We were headed toward Tyler. Yes, on the main highway. Yes sir, we picked them up on that highway. They got in the back seat with the two girls. My husband and I were on the front seat. Mr. Tucker carried us down the road about a mile and a half or two miles, still continuing on toward Tyler. We stopped after we got out about a mile and a half or two miles out, on the side of the road. Yes sir, we pulled off on a side road. Yes sir, after we pulled off on the side road and stopped a conversation took place between C. T. Tucker and those negroes. Well, the girls got out of the car and so did they. Yes, the negroes got out and the girls did too, and that was the first time for one of them, the small girl, and he told the older one to be careful with the little girl because that was her first time to be out with any one, and to be careful with her. C. T. Tucker said that. Yes sir, I have seen the witness Young Johnson around the court house today. Yes sir, he appears to be the same negro. Irene was the little girl he was speaking of. At that time Irene was quite smaller than she is now, she weighed somewhere around 97 pounds at that time. I imagine she weighs around about 123 or 124 pounds now. Ruby weighed at that time 119 pounds, somewhere about 119. Yes sir, she was a right smart heavier than Irene. There is nearly two years difference in their ages. Ruby is the oldest. There was about four inches difference in their height, Ruby taller than Irene.

"Q. Was there anything said about money there at that time between your husband and the negroes? A. Well, he always told them to get the money. Yes, he always told the girls to get the money. Yes sir, the girls left the car. Well, they carried a blanket or quilt pad or something with them. Yes sir, Irene carried one. They went to a corn patch. The negroes went to the corn patch to. They stayed about ten or fifteen minutes. When they came back they were all somewhere together. Well, I recall that they walked up the road and we picked them up. Yes, the negroes did. Yes sir, the girls got in the car at the time, and the negroes walked up the road and we picked them up. We brought the

negroes back to Bullard. On the following morning I examined the underclothes Irene was wearing that night. I am referring to her slip. Yes sir, I found something out of the ordinary on the slip. There was a few spots of blood on the slip. Yes, I talked to Irene about that. My husband was lying on the bed on the porch at that time. We were all out there together. At that time I asked Irene if she was sore and she said she was. Yes sir, the defendant was present at that time, he was lying on the bed. I asked Irene if she felt alright that morning and she said she was a little sore. That is right, she said she was sore in her private parts. Yes sir, I asked her that and she said she was. Yes I did say something to my husband about it at that time, it worried me. I told him that I was scared because I was afraid she had went bad. Well, I want to get it correct, I can't say the exact words he said, but he didn't think it was anything serious or dangerous. Yes sir, he said he told that negro the night before to be careful with her. He told him to be careful with her and not hurt her. I don't recall anything else at this minute that I said. Well, he said there on the porch that morning that he didn't think she was ruined. Yes sir, those girls in my presence gave my husband some money that night. Yes, Irene gave him some money. She gave that money to her father when she came back to the car. Yes, that was in Smith County, Texas, where we stopped the car out there."

There was no testimony offered by appellant save that of the daughter Irene. On cross-examination by the State the last thing she testified to was:

"Yes sir, I did admit to you that I did have sexual intercourse with Young Johnson, but that I couldn't tell it out here in the court room in the presence of all these people. Yes sir, I told you that."

Under these circumstances,—and taking into consideration all the testimony offered by the State, which is shown above,— we are of the opinion that such is sufficient to show that at the connivance and suggestion of the father, this fifteen year old girl had an act of intercourse with this negro Johnson, and the jury was warranted in so finding.

The court charged the law of principals; after giving the elements of the crime of rape, he charged on the necessity of showing penetration; he also charged on previous unchastity of the female; on circumstantial evidence; on an accomplice and

the necessity for a corroboration of such testimony; he submitted the question of accompliceship of the mother to the jury under a proper charge; he limited the testimony regarding the contradictory statements of Irene Tucker to her credibility only; he instructed the jury that the negro Johnson was an accomplice, and set forth the necessity for his testimony to be corroborated, all of which elements were in a comprehensive and well worded charge, which impresses us with the idea that such was all the law demanded by the facts herein.

Appellant's bill of exceptions No. 1 complains because of the trial court's refusal to instruct the jury to return a verdict of not guilty at the close of the testimony of Irene Tucker, the first witness used by the State. While it is true that this witness denied any act of intercourse with Johnson, nevertheless we think the State should have been allowed to attempt to prove by further testimony, either direct or circumstantial, the offense charged. The bill is overruled.

Bill of exceptions No. 2 relies upon the same reasoning as bill No. 1, save that same is based upon the testimony of Young Johnson in which he testifies that no act of intercourse took place between himself and the girl Irene. We overrule the same on the reasoning offered in bill No. 1.

Bill of exceptions No. 3 presents the question of the girl Irene's testimony relative to her previous chastity. It will be observed that this girl had reiterated the criminative testimony as to appellant's participation in an act of intercourse with Johnson outside of the court room more than once, but that when placed upon the witness stand she repudiated such statements and denounced them all as "a lie" time after time. She also freely asserted that she had lied many times about this matter, and admitted that she did not wish her father to be punished in this case, possibly having in mind the severe penalty meted out to him in the first trial hereof. Under such circumstances the State was surely suprised and had the right to attack such witness in her suddenly changed version of this occurrence.

The fact of a previous unchastity of the female over fifteen and less than eighteen is an affirmative defense, the burden of proving which is upon the appellant offering such defense. See Simpson v. State, 93 Tex. Cr. R. 303, 247 S. W. 548; Norman v. State, 89 Tex. Cr. R. 330, 230 S. W. 991; Cloniger v. State, 91

Tex. Cr. 143, 237 S. W. 288. And it seems that the testimony is sufficient if it raises a reasonable doubt in the jury's mind.

Under the condition of this witness' testimony, her changing and contradicting statements, her admitted prejudice in appellant's favor, her vague and inconclusive statements as to the prior intercourse, the blood on her underclothing, the admitted soreness of her parts, and the statement of appellant that "this was her first time out," furnished the jury with sufficient facts to say they disbelieved her testimony in its entirety, and especially refused credence to her statement relative to previous acts of intercourse, and that her testimony as to previous acts of intercourse did not raise a reasonable doubt in their minds as to her previous chastity. Where any of her testimony was in the presence of another save Johnson, it was contradicted, and none of it seemed to have been given credence by the jury. They doubtless availed themselves of the adage of "false in one, false in all," and under the careful trial judge's instruction relative thereto, they evidently believed nothing the girl said while on the stand.

Appellant's bill of exceptions No. 4 was not approved by the trial court, who prepared his own bill, which bill was not excepted to, and which we here set forth:

"BE IT REMEMBERED that heretofore, to-wit, at a regular day and term of this Court, to-wit, the 7th day of November 1940, at the November term, came on to be heard the above entitled and numbered cause, in which the defendant, C. T. Tucker, was charged by indictment for the crime and offense of statutory rape on his daughter, Irene Tucker; that after the State had announced ready for trial and placed the witness, Irene Tucker, on the witness stand, she refused to answer the questions. She was admonished by the Court that he would regret very much to place her in jail but unless she answered the questions of the District Attorney, he would have to send her to jail. She still refused after the District Attorney had asked the question and after she had stated that she understood what the question was. She was then placed in the custody of the sheriff but later was brought back and carried back in the District Clerk's office by the Judge who stated that he wanted to question her and wanted to find out what the real facts were. After talking with the witness and explaining to her that she would have to answer the question but that she must answer the question truthfully, and after the witness had told the Court that she

would not testify to anything that would put her Father in the Electric chair, she was instructed by the Court that all the Court wanted was the truth and not to testify anything except the truth. Counsel for the State and Counsel for the Defendant were called in the District Clerk's office and a full explanation made, and the defendant's counsel then asked permission to talk with the witness privately and this permission was granted, and she was taken out of the presence of the Court by the Attorneys for the defendant. She afterwards returned to the witness stand and testified as contained in the Statement of Facts. There was nothing said in the presence of the jury except that the fact that the Court stated to her that he although regretting to do so would have to put her in jail if she refused to answer the question. The Attorney for the defendant excepted to the action of the Court and presented his Bill of Exception which the court found incorrect and which he refused to approve, and makes this the Court's Bill of Exception in lieu of the Defendant's Bill of Exception No. 4, and approves the same as correctly reflecting the transaction as it occurred."

We think this bill answers the complaint, and we can only commend the trial court for his conduct in the matter.

Bill of exceptions No. 5 was refused by the court, being covered by the just above quoted bill.

Appellant's bill of exceptions No. 6 is in the same condition as bill No. 5, and will not be considered.

We find no merit in bill of exceptions No. 7, and overrule the same.

Bill No. 8 complains because the trial court submitted to the jury the question as to whether the witnesses Goldie Winfrey and Ruby Tucker were accomplices, his insistence being that the court should have peremptorily told the jury that such witnesses were accomplices as a matter of law. This bill may be multifarious, but suffice it to say that we think under the circumstances no question is presented relative to the accompliceship of Ruby Tucker, and under the testimony offered, we think the question of the accompliceship of Mrs. Winfrey should have been submitted to the jury. The bill is overruled. Bill of exceptions No. 9 is overruled.

Bill of exceptions No. 10 relates to a complaint of the court's

charge because therein the court did not denominate the witness Young Johnson as an accomplice. It is noted that the court did give to the jury the meaning of the word accomplice, and did tell them that they could not convict the defendant on the testimony of Johnson unless they first believed beyond a reasonable doubt that the same was true, and not even then unless there was other evidence outside of his evidence corroborative thereof, etc.

It will be observed that, while not saying in so many words, Johnson was an accomplice, the court unequivocally placed him in the category of an accomplice, and required corroboration of his testimony. We think such a charge was sufficient.

Bill of exceptions No. 11 is overruled, there being no error evidenced therein.

Bill No. 12 relates to the State questioning the witness Johnson, and using while thus questioning him a certain statement made by such witness before a Smith County grand jury. This bill is qualified by the trial court as follows:

"APPROVED WITH THIS QUALIFICATION: The written confession or statement of the witness Johnson was never offered in evidence by the District Attorney but when he was placed upon the witness stand by the State, he was an unwilling witness and I permitted leading questions to be asked him and in framing the question I permitted the District Attorney to read extracts from the statement that he made before the Grand Jury of Smith County and asked him whether or not he made such statement. The statements by him were never at all offered as original evidence and was only used for the purpose of examination by the District Attorney. The only objection made to the testimony was because it was not shown to have been made voluntarily and second that it was hearsay and the statement was not offered, as I stated, as original evidence. In fact I excluded it, sustained an objection to its introduction except for the purpose of examination of the witness by the District Attorney. The Bill of Exception is approved with the above qualification."

We think bill of exceptions No. 13 is without merit, and same is overruled.

Under the peculiar circumstances of this case we think bill

of exceptions No. 14, which complains of a statement made to Ruby Tucker by Irene Tucker relative to being sore on the next morning after the alleged act of intercourse, evidences no error. Such a complaint by Irene in the presence of her father and mother is in the record without an objection appearing thereto.

Bill of exceptions No. 15 relates to the trial court's failure to instruct the jury relative to a verdict of not guilty at the close of all testimony herein. We think the court was correct in refusing such request.

While this cause is presented to us in a peculiar manner, it is also a peculiar crime, one that is calculated to shock the conscience of all right thinking people, and if it happened, which the jury said it did, then it evidences such depravity of mind and neglect of all humane qualities as to deserve the penalty of imprisonment for life. While the matter has not been free from doubt, we are convinced that the State has met the burden of proof demanded by law, even in the face of the oft repeated denials of the poor little girl, who was the victim, not of a father's unholy lust, but of his greed for money.

The judgment is therefore affirmed.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

In his motion for rehearing appellant seriously contends that we erred in our original opinion in holding the evidence sufficient to justify and sustain his conviction. He bases his contention upon the testimony of Irene Tucker, the injured female and the negro, Johnson, with whom she had the act of sexual intercourse. The State proved by the mother of Irene and by her sister, who were present, that the girl and the negro went to a corn field, carrying a blanket; that the appellant said to Johnson, "Be careful with her; this is her first time out." Ruby Tucker testified that she and the other negro also went to the corn field, where they laid down on a blanket; that she heard Irene say after she had laid down on the blanket with the negro, "Get up, you are hurting me." The next day Irene was complaining of being sore in her privates and there was some blood on her underwear. These facts directly controverted her and Johnson's denial of the act of intercourse. Both she and the negro were unwilling witnesses. She did not want to see her father punished, all of which, no doubt, the jury took into consideration in passing upon the question of appellant's guilt.

With reference to her previous unchastity, it is true that she testified that she had previously had sexual intercourse with some boy friends in the Valley but she could not and did not name any of the boys. Furthermore, if she had previously had intercourse with boy friends in the Valley, she most likely would not have been sore on the morning after the act in question, nor would it be probable that she would have bled. Moreover, when she and the negro left the car with the blanket, her father told the negro to be careful with her as it was her first time out. She did not deny this or make any statement to the contrary. We think that the jury who saw her on the witness-stand, heard her testify and considered her motive for denying the act, had a right to discard her testimony relative to previous acts of sexual intercourse.

Inasmuch as we have set out the testimony at length in the original opinion, we do not deem it necessary to reiterate the same here.

Believing that the case was properly disposed of on the original submission, the motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.