**Opinion issued August 3, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00318-CR

———————————

**DONOVAN JACOB FARR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1675614**

---

## MEMORANDUM OPINION

Donovan Jacob Farr entered a plea of guilty to the offense of tampering with a government record. The trial court withheld a finding of guilt and placed Farr on deferred-adjudication community supervision for a period of four years. Later, finding that Farr had violated the terms of his community supervision, the trial court

adjudged him guilty of the offense and assessed his punishment at ten years in prison. Farr appeals, arguing in a single issue that the trial court abused its discretion in finding that he had violated the terms of his community supervision. We affirm.

## BACKGROUND

The State moved to revoke Farr's deferred-adjudication community supervision and adjudicate his guilt. It argued that he had violated the terms of his community supervision by violating Section 32.51 of the Texas Penal Code, which makes it an offense to fraudulently use or possess another's identifying information.

Farr pled not true to the State's allegations. And the trial court, sitting as factfinder, held an evidentiary hearing to decide whether the allegations were true.

The State called three witnesses, the first of which was Jackie Scurry, the court liaison officer for the 209th District Court. As part of her job, she is the custodian of records for probation-related documents. Scurry testified that Farr had been placed on deferred-adjudication community supervision for a period of four years in connection with a prior case alleging that he tampered with a government record. She further stated that Farr's period of deferred adjudication had not yet concluded.

Scurry explained that the 209th District Court imposed terms and conditions on Farr in connection with the deferred adjudication and that these terms and conditions had been explained to Farr. Farr indicated that he understood the terms and conditions by signature. One of these terms and conditions was that he not

2

commit any criminal offenses. But Farr did not comply, specifically by committing the offense of fraudulently using or possessing another's identifying information.

A copy of the district court's order of deferred adjudication was admitted into evidence without objection. Accompanying the order was a document entitled Conditions of Community Supervision. Its first term provides that Farr "[c]ommit no offense against the laws of this or any other State or of the United States."

The State's second witness was D. Frederick, a peace officer with the Pasadena Police Department. He conducted a traffic stop when Farr made an unsafe lane change and ultimately arrested Farr due in part to an outstanding warrant.

During the traffic stop, Frederick searched Farr's vehicle. He found two checks in the center console that he "believed to be fraudulent at the time." Once at the jail for booking, Frederick searched Farr's wallet for contraband and found "several IDs and debit cards that did not belong to him." The names of the persons associated with these IDs and debit cards were Camron Finney, Ikoreous Youngblood, Daniel Reyes, Christian Saenz, Joshua Blackmon, and Danielle Lewis.

Farr told Frederick that he purposely obtained the card belonging to Christian Saenz under a false name. That is, Farr claimed that he was Saenz, explaining that he used a false name in this case because he was a convicted felon under his own name. Farr claimed Reyes was his cousin. He further claimed Finney was his

nephew. Farr gave no explanation as to why he had the ones relating to Blackmon or Lewis, but he claimed that Youngblood "was possibly his sister's boyfriend."

On cross-examination, Frederick stated with respect to the two checks that he "passed the investigation off to our financial crimes detectives." Thus, Frederick himself did not know one way or the other whether the checks were fraudulent.

Frederick also agreed that he called a second officer, K. Adams, to the scene of the traffic stop. Frederick did not recall whether he or Adams first collected Farr's wallet during the traffic stop. But body-camera footage showed that Adams did so.

Adams conducted an inventory of the contents of Farr's vehicle. Frederick admitted he "wasn't aware exactly" what Adams did during this process. Defense counsel asked whether it was possible that Adams "may have found some more of those cards, like the ones you found, and then put them in" Farr's wallet "just to condense them." Frederick replied "anything is possible" but said he did not know.

Farr told Frederick the vehicle he was driving belonged to his brother. Frederick testified that he runs the vehicle registration during all traffic stops, but he could not recall the results here. So, he did not know to whom Farr's vehicle was registered. Nor was this detail memorialized in Frederick's report about the stop.

Finally, the State called Ikoreous Youngblood to the stand. Youngblood testified that he did not know Farr. He said he left his ID in his car, which was stolen. Youngblood said he never gave Farr or anyone else permission to have his ID.

4

Farr then testified in his own defense. The day he was stopped, he was out on bond and did not have his own vehicle, so he had borrowed his brother's vehicle.

Farr testified he did not know about the checks in the vehicle's console. He denied that Youngblood's ID had been in his wallet. He said he did not know how it got in there. Farr said that none of the other IDs or debit cards had been in his wallet either. But he conceded on cross-examination that his charge for tampering with a government record arose from an attempt to buy a vehicle with a fraudulent ID.

In his closing argument, defense counsel argued that the trial court should credit Farr's testimony that the various IDs and debit cards in others' names were not in his wallet. Defense counsel maintained that the IDs and cards may well have just been in the vehicle and then placed in Farr's wallet by Officer Adams when he inventoried the vehicle so as to collect them all in a single place. According to defense counsel, the IDs and debit cards may have belonged to Farr's brother instead.

The trial court found by a preponderance of the evidence that the State's allegation that Farr had committed the offense of fraudulently using or possessing identifying information was true. Thus, the court adjudged Farr guilty of the offense for which he had been on deferred-adjudication community supervision—tampering with a government record—and sentenced him to ten years of imprisonment.

**DISCUSSION**

Farr argues that the evidence is legally insufficient to show that he violated the terms of his community supervision by committing the offense of using or possessing another's identifying information. In particular, he argues that the State did not prove by a preponderance of the evidence that he possessed another's identifying information with the specific intent to defraud or harm another.

**Standard of Review**

We review a trial court's decision to revoke deferred-adjudication community supervision for an abuse of discretion. *Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012). In general, a trial court has the discretion to revoke community supervision when a preponderance of the evidence supports one of the State's allegations that the defendant violated a condition of his community supervision. *Id.*

**Applicable Law**

A person commits the offense of fraudulently using or possessing identifying information if, among other things, he, with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of identifying information of another person without the other person's consent or effective consent. TEX. PENAL CODE § 32.51(b)(1). The general purpose of criminalizing this conduct is to prevent identity theft. *Jones v. State*, 396 S.W.3d 558, 562 (Tex. Crim. App. 2013).

Identifying information is information that alone or in conjunction with other information identifies a person, including a person's name and date of birth or unique electronic identification number, address, routing code, and financial institution account number. PENAL § 32.51(a)(1)(A), (C). The unit of prosecution is "any piece of identifying information enumerated in the statute that alone or in conjunction with other information identifies a person, and does not mean each document containing a group of identifying information," such as each driver's license or check. *Cortez v. State*, 469 S.W.3d 593, 604 (Tex. Crim. App. 2015); *see also Grimm v. State*, 496 S.W.3d 817, 822 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Cortez* for proposition that "'item of identifying information' does not refer to the individual record where the information appears" and observing that "an individual record may actually contain more than one item of identifying information").

One is presumed to have the intent to harm or defraud another if he possesses the identifying information of three or more other persons. PENAL § 32.51(b-1)(1). The other persons must be real ones, not fictional persons. *Jones*, 396 S.W.3d at 563. Otherwise, proof of intent to harm or defraud may be direct or circumstantial. *Sanchez v. State*, 536 S.W.3d 919, 920–21 (Tex. App.—Houston [1st Dist.] 2017, no pet.). To prove the element of intent, the State need not disprove exculpatory explanations offered by the defendant that turn on his credibility. *Id.* at 921–22.

7

**Analysis**

The sole element that Farr challenges on appeal is intent, arguing that the State did not prove he had the intent to harm or defraud another. However, Officer Frederick testified that Farr had in his wallet IDs or debit cards in six different names other than his own: Camron Finney, Ikoreous Youngblood, Daniel Reyes, Christian Saenz, Joshua Blackmon, and Danielle Lewis. Because Farr possessed the identifying information of three or more other persons, the trial court was entitled to presume that he did so with the intent to harm or defraud. PENAL § 32.51(b-1)(1).

Moreover, even without the aid of the presumption, the trial court could have reasonably inferred an intent to harm or defraud from the evidence. For example, Frederick testified that Farr had claimed that Youngblood might be his sister's boyfriend, as a way of providing an innocent explanation for the possession of his ID. But Youngblood's testimony, which the trial court sitting as factfinder was entitled to credit, refuted Farr's explanation and detracted from Farr's credibility. *See Bell v. State*, 649 S.W.3d 867, 898 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd) (trial court, as trier of fact in revocation proceeding, assesses credibility of witnesses and decides weight their testimony merits, and appellate court must examine evidence in light most favorable to trial court's revocation order on appeal).

Similarly, if the trial court credited Frederick's testimony, Farr himself acknowledged that he possessed one of the IDs for the explicit purpose of fraud,

8

stating that he obtained the Saenz ID under that name, rather than his own, to avoid the disclosure of his true identity on account of his status as a convicted felon. Based on this testimony, the trial court could have reasonably inferred that Farr also possessed other IDs in different names for the purpose of committing identity fraud. Though a factfinder is never bound to apply it, the adage "false in one, false in all" is often very persuasive, especially when an evaluation of the truth turns in significant part on credibility. *See Tucker v. State*, 150 S.W.2d 1025, 1029 (Tex. Crim. App. 1941) (jury was entitled to avail itself of adage "false in one, false in all" as to witness's testimony and apparently did so, crediting nothing she said on stand).

Finally, the trial court was not obliged to accept Farr's contrary testimony at the hearing, in which he denied having put the IDs and debit cards in his wallet. Nor was the trial court obliged to accept the defense positions that the IDs and debit cards may have belonged to Farr's brother or that Officer Adams must have put them in Farr's wallet, both propositions for which there is no direct evidence in the record. Nor was the State required to disprove exculpatory explanations of this kind to prove that Farr had the intent to harm or defraud. *See Sanchez*, 536 S.W.3d at 921–22.

We overrule Farr's sole issue on appeal.

**CONCLUSION**

We affirm the trial court's judgment.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Rivas-Molloy.

Do not publish. TEX. R. APP. P. 47.2(b).