

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00011-CR

---

RICKY D. ELLIOT                                                 APPELLANT

V.

THE STATE OF TEXAS                                             APPELLEE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1447427D

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

Appellant Ricky D. Elliot appeals his conviction for possession of a controlled substance—methamphetamine—in the amount of more than 4 grams but less than 200 grams. In one issue, Elliot argues that the trial court erred by not suppressing the methamphetamine. Specifically, he argues that the arresting

---

[1]*See* Tex. R. App. P. 47.4.

officer in this case did not have proper justification to conduct a *Terry* frisk and, in the alternative, that the officer exceeded the permissible scope of the frisk. We will affirm.

## II. Background

Officer Bengal, a patrol officer with the City of Fort Worth, testified at the suppression hearing. According to Bengal, on March 4, 2016, he received a call to issue a criminal-trespass warning at a nearby gas station. Bengal described the area around the gas station as "a high foot traffic, high transient area." He also said that the area is rife with "prostitution, narcotics, disturbances, and violence of every nature."

After arriving at the gas station and learning from the manager that the person he wished to have a criminal-trespass warning issued to had left, the manager pointed toward Elliot and asked Bengal to issue a criminal-trespass warning to him. Bengal averred that as he approached Elliot, he explained to him that he was going to issue him a criminal-trespass warning and that he was not under arrest but that if he came back after the issuance, he would be arrested. Bengal said that Elliot was "nervous, kind of agitated," and "wanted to leave as soon as he was pointed out by the manager." Bengal further described Elliot as being "physically jittery" and speaking rapidly. Bengal also noticed that Elliot had several bulges in his pockets and vest.

Bengal said that Elliot's behavior and the bulges concerned him because the area where he was had a particularly high transient population and that

transients in that area were known to carry weapons. Bengal was also alone because his backup had not arrived on the scene yet. So Bengal decided to conduct a frisk to ensure that Elliot was not armed.

As he was conducting the frisk, Bengal said that he felt "a card deck-sized object" in Elliot's left pocket that had "sharp angles" and "hard edges"; that it was "something angular"; and that it had a "little density to it." Wanting to ensure that it was not a weapon or something containing a weapon, Bengal removed the object from Elliot's pocket. Bengal said that he discovered that it was a "cigarette container with the top flipped back." Bengal averred that he then noticed that along with cigarettes, the container had "a clear plastic baggie [containing] a white crystalline substance" which, from his training and experience, he knew to be methamphetamine. The State admitted and published for the trial judge a video from Bengal's body camera. In the video, Bengal can be seen holding the open cigarette container up to his camera lens immediately after he had removed it from Elliot's pocket. In the video, Elliot also tells Bengal that he is homeless, having recently been released from incarceration, and did not wish to be involved in anything that might be relayed to his probation officer.

The trial court denied Elliot's suppression motion. Later, Elliot entered a plea agreement whereby the trial court sentenced him to ten years' incarceration. The trial court also certified Elliot's right to appeal the suppression ruling, and this appeal followed.

3

## III. Discussion

In his sole issue, Elliot argues that Bengal was not justified in frisking him and that even if Bengal had justification, he exceeded the scope of the *Terry* frisk. We disagree.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility

4

and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

5

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

**B.    The Law Regarding *Terry* Frisks**

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880

6

(1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards any subjective intent of the detaining officer and looks solely to whether an objective basis for the detention exists. *Id.*

Once a suspect has been lawfully detained, an officer may conduct a limited search for weapons, or a "protective frisk," when a frisk is reasonably warranted for the officer's safety or for the safety of others. *See Terry*, 392 U.S. at 34, 88 S. Ct. at 1886; *Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002). A pat-down search for weapons without a warrant is justified only when specific and articulable facts, when taken together with rational inferences from those facts, reasonably could lead to the conclusion that the suspect might possess a weapon. *See Terry*, 392 U.S. at 27, 29–31, 88 S. Ct. at 1883, 1884–85; *Carmouche*, 10 S.W.3d at 329–30. The officer need not be absolutely certain that an individual is armed—the issue is whether a reasonably prudent person justifiably would believe that he or others were in danger. *See Balentine*, 71 S.W.3d at 769; *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000).

## C.    Bengal was justified in conducting the *Terry* frisk.

Here, when Bengal came upon the scene of the gas station, the person he was originally called to issue a criminal-trespass warning to had left, but the manager singled out Elliot and asked that Bengal issue him a criminal-trespass warning. Such an action by Bengal would reasonably necessitate a physically close encounter with Elliot lasting at least several minutes. *Malcolm v. State*, No. 05-01-00498-CR, 2002 WL 1801597, at \*3 (Tex. App.—Dallas Aug. 7, 2002, no pet.) (not designated for publication). As Bengal approached him, Elliot acted as though he "wanted to leave," and he was agitated and nervous. It is common knowledge that fear can be a strong motivator of rash action. *Id.* Elliot also spoke rapidly and was "physically jittery." And as Bengal approached Elliot, he noticed several bulges in Elliot's pockets and vest. From Bengal's experience in the gas station's location, he knew that transient individuals often carried weapons given the area's reputation for violence. Out of concern for his own safety, Bengal then conducted a pat-down search of Elliot's outer clothing and felt "a card deck-sized object" in Elliot's left pocket that had "sharp angles" and "hard edges." Bengal also described the object as "something angular" that had a "little density to it." Wanting to ensure that it was not a weapon or something containing a weapon, Bengal removed the object from Elliot's pocket. It was then that Bengal discovered that the object was a "cigarette container with the top flipped back." And there, in plain view, Bengal observed that the cigarette container contained what Bengal's training and experience had taught him was

8

methamphetamine. All of these facts are objective, specific, articulable, and supportive of the trial court's ruling. Thus, we hold that Bengal was justified in conducting the *Terry* frisk of Elliot. *See id.* (holding that officers who were attempting to issue a criminal-trespass warning to an individual who acted "fidgety and apprehensive," and where officers observed a bulge in the individual's pants, were justified in conducting a *Terry* frisk).

Elliot argues that even if the frisk was justified at its inception, Bengal exceeded the permissible scope of the frisk. Specifically, and relying on *Davis v. State* and *Harris v. State* for the proposition that "[w]ithdrawing small containers from a suspect's pocket is impermissible," Elliot argues that Bengal was only allowed to frisk for weapons and that Bengal's belief that what he had felt could have been or could have contained a weapon was objectively unreasonable. 829 S.W.2d 218, 221 (Tex. Crim. App. 1992); 827 S.W.2d 49, 51 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). But Elliot's reliance on these cases is misplaced. *Davis* and *Harris* dealt with a matchbox and small gum container, respectively, where officers in both cases testified that they feared a razorblade could have been secreted away. 829 S.W.2d at 221–22; 827 S.W.2d at 52. Both of those courts held that this belief was objectively unreasonable because there were multiple officers present and the officers opened the containers once they had removed them from the individuals' pockets. 829 S.W.2d at 221; 827 S.W.2d at 52. Unlike in either *Davis* or *Harris*, however, here, Bengal testified that the size of the container that he felt could have contained a more sinister

and dangerous weapon—Bengal testified that he knew of a small-caliber handgun that was capable of firing two rounds that was smaller than the size of the cigarette container he felt upon his frisk. Bengal was also alone. And Bengal did not open the container once he removed it from Elliot's pocket—it was already open. We also note that there is no evidence in the record to support Elliot's contention that Bengal manipulated the cigarette container, causing it to open. Indeed, the trial court had before it both Bengal's testimony to the contrary and a video from Bengal's body camera showing that immediately upon the removing of the cigarette package, it was open. We conclude that the trial court did not err by denying Elliot's suppression motion, and we overrule both parts of Elliot's sole issue on appeal.

## IV.  Conclusion

Having overruled Elliot's sole issue on appeal, we affirm the trial court's judgment.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DELIVERED:  April 12, 2018

10