

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00347-CR

_____

LAWRENCE EDWARD MCGEE, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. 58,044-B

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Lawrence Edward McGee appeals his conviction and his forty-year sentence for possessing between four and two hundred grams of methamphetamine, a controlled substance.[1] In two issues, he argues that the trial court erred by denying his motion to suppress. He asserts that the trial court should have suppressed the methamphetamine evidence because the police's discovery of the drug resulted from an illegal detention and an improper warrantless search. We disagree and affirm the trial court's judgment.

## Background[2]

One day in the summer of 2016, David Leonard, a Wichita Falls police officer who has made approximately one hundred narcotics arrests, received a call asking him to help fellow police officer Matthew Bailey investigate a burglary of a vehicle. Officer Bailey had learned that during the burglary, the perpetrator had stolen a Louis Vuitton bag and an iPad. Officer Bailey had also learned that the iPad was playing an alarm and was sending out a signal that pinpointed its location at a local hospital.[3]

---

[1]*See* Tex. Health & Safety Code Ann. § 481.102(6) (West Supp. 2018), § 481.115(a), (d) (West 2017).

[2]The text in the body of this section of the opinion details facts developed during the pretrial suppression hearing. In footnotes, we will add pertinent facts arising from testimony at trial.

[3]Officer Bailey testified at trial that the burglary victim arrived at the hospital and used an iPhone app to sound the iPad alarm.

Officer Leonard went to the hospital. By the time he arrived, Officer Bailey had spoken to a hospital security guard and was monitoring McGee and a female as suspects of the burglary. As McGee and the female left an emergency room, Officer Leonard detained McGee while Officer Bailey questioned the female. According to Officer Leonard, the female was holding the bag.[4] McGee was wearing loose-fitting gym shorts that had large pockets.

Officer Leonard placed handcuffs on McGee[5] and told him that he was going to frisk him for weapons. He asked McGee whether he had "anything in his pockets that would hurt or cut anybody." Near that time, a hospital security guard told Officer Leonard that he saw a pocket knife clipped to McGee's right pocket. Officer Leonard retrieved that knife and asked McGee whether he had any other weapons. McGee said that he had another knife.[6] Officer Leonard felt the outside of McGee's left pocket and could not immediately feel a knife. He continued to frisk McGee, and McGee

---

[4]At trial, Officer Bailey testified that as McGee and the female were leaving the hospital, the female was in a wheelchair, and McGee was holding the bag. Upon the female's detention, she acknowledged to Officer Bailey that the bag was stolen.

[5]Officer Leonard testified at trial that he handcuffed McGee upon Officer Bailey's request and that when he did so, he did not know specific facts about the burglary.

[6]In the suppression hearing, Officer Leonard testified that McGee said "that there was [a knife] in his other [left] pocket." At trial, he testified that McGee did not specify which pocket the second knife was in.

attempted to turn away.[7] McGee's doing so "gave [Officer Leonard] more . . . concern that . . . [he] needed to get a weapon out of [McGee's] pocket."

Officer Leonard put his hand inside McGee's left pocket to "secure the knife that he stated he had." When he did so, McGee's pocket "opened up," and Officer Leonard saw and felt a plastic baggie "that [he knew] from experience, training[,] and everything to be a common method of carrying drugs." Officer Leonard later explained,

> After checking the outside of his pocket and not . . . quickly identifying what would be a pocket knife because he had something else in his pocket, I went to go put my hand in his pocket, and in doing so, I was able to see the baggie after I already told him that I was going to retrieve the knife he said he had.

Officer Leonard took the baggie out of McGee's left pocket and then took the second knife out of that pocket. The baggie contained methamphetamine.

A Wichita County grand jury indicted McGee with possessing between four and two hundred grams of methamphetamine. Before trial, McGee filed a motion to suppress evidence concerning the discovery of the methamphetamine. In the motion, he argued that the police had violated his federal and state constitutional rights by arresting him without a warrant or probable cause and by searching for and seizing evidence without a warrant or probable cause.

---

[7]The security guard who alerted Officer Leonard to the first knife testified at trial that as Officer Leonard "went to pat-down the left side of [McGee], [McGee] kept pulling his leg away."

The trial court held a pretrial hearing on McGee's motion to suppress. After Officer Leonard testified about how he had found the methamphetamine, the trial court denied the motion to suppress. The court stated on the record that Officer Leonard's "safety search was appropriate and that the items that were found during the safety search were found in a valid and legal way." The court did not make written findings of fact or conclusions of law.

At trial, McGee pleaded not guilty; a jury found him guilty. The trial court heard evidence on his punishment and sentenced him to forty years' confinement. He appealed.

## Suppression Ruling

In two issues, McGee contends that the trial court erred by denying his motion to suppress. First, he argues that Officer Leonard violated his constitutional rights by detaining and handcuffing him. Second, he contends that following the detention, Officer Leonard's warrantless search and seizure of the methamphetamine was constitutionally invalid.

### Standard of review

We apply a bifurcated standard to review a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex.

5

App.—Fort Worth 2003, no pet.). The trial judge is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Therefore, we defer almost totally to the trial court's rulings on (1) questions of historical fact, even if the trial court determined those facts on a basis other than evaluating credibility and demeanor, and (2) application-of-law-to-fact questions that turn on evaluating credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the witnesses' credibility and demeanor, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a suppression motion, we must view the evidence in the light most favorable to the ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court does not make explicit fact findings, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

**General search and seizure principles**

The Fourth Amendment protects persons against unreasonable searches and seizures by government officials.[8] U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant makes this showing, the burden of proof shifts to the State, which must then establish that the search or seizure was nonetheless reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

**McGee's detention**

In his first issue, McGee challenges Officer Leonard's detaining and handcuffing him as he was leaving the hospital. The State contends that the detention was constitutionally valid because Officer Leonard reasonably suspected that McGee had engaged in criminal activity.

---

[8]McGee relies on the Fourth Amendment and also cites a similar Texas constitutional provision. *See* Tex. Const. art. I, § 9. McGee does not argue that the Texas constitution provides greater rights than the Fourth Amendment, so we will not analyze McGee's Texas constitutional argument independently. *See Merrick v. State*, Nos. 02-17-00035-CR, 02-17-00036-CR, 2018 WL 651375, at *4 (Tex. App.—Fort Worth Feb. 1, 2018, pet. ref'd).

A warrantless temporary detention of an individual by a police officer that amounts to less than an arrest is reasonable and constitutionally permitted if the officer reasonably suspects the individual of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This standard disregards the detaining officer's subjective intent and looks solely to whether the officer has an objective basis for the detention. *Id.*

To justify an investigatory detention, the detaining officer need not be personally aware of every fact that objectively supports reasonable suspicion to detain. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App.), *cert. denied*, 565 U.S. 840 (2011). Rather, we consider the cumulative information known to the cooperating officers at the time of the detention in determining whether reasonable suspicion existed. *Id.*

In overruling McGee's motion to suppress, the trial court implicitly found that Officer Leonard had reasonable suspicion that McGee had engaged in criminal activity and therefore lawfully detained him. *See Garcia-Cantu*, 253 S.W.3d at 241. Officer Leonard's testimony supports this finding.

8

Officer Leonard explained that before he detained McGee, Officer Bailey had learned that the burglary victim, through a security feature on the stolen iPad, had pinpointed its location to the hospital. He further testified that before the detention, the victim and a security officer had "pointed out the suspects," including McGee, who "had the described stolen [bag]." The victim had set off an alarm on the iPad, and in response, the suspects "kept pulling out [the] electronic device." When Officer Leonard detained McGee as he was leaving the hospital, his female companion was carrying the stolen bag.

Under these facts, we conclude that Officer Leonard could have reasonably suspected that McGee, alone or in concert with his companion,[9] had engaged in criminal activity by committing burglary of a vehicle, and Officer Leonard therefore had authority to detain McGee for further investigation. *See Ford*, 158 S.W.3d at 492; *Carmouche*, 10 S.W.3d at 328; *see also* Tex. Penal Code Ann. § 30.04(a) (West Supp. 2018).

McGee appears to contend that for Officer Leonard to lawfully detain him for burglary, Officer Leonard had to reasonably believe that the burglary involved violence or a threat of violence. He cites no authority supporting that proposition, and we have found none. *Cf. Leos v. State*, No. 08-04-00324-CR, 2006 WL 1132859, at *2–3 (Tex. App.—El Paso Apr. 27, 2006, no pet.) (not designated for publication)

---

[9] *See* Tex. Penal Code Ann. § 7.01(a) (West 2011) ("A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.").

(holding that when the defendant left a store with a pair of pants without paying for them, an officer had reasonable suspicion to detain the defendant to investigate theft).

McGee also seems to argue that even if Officer Leonard's detention of him was justified, the detention became invalid when Officer Leonard handcuffed him. He appears to assert that Officer Leonard could handcuff him only if Officer Leonard was at that time reasonably concerned for his own safety or for the safety of others.

A defendant's assertion of grounds for suppression raised in an appellate court must comport with his articulated grounds for suppression in the trial court, or else the grounds are not preserved. *See* Tex. R. App. P. 33.1(a)(1); *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *see also Thornburg v. State*, No. 02-14-00453-CR, 2015 WL 4694094, at *8 (Tex. App.—Fort Worth Aug. 6, 2015, pet. ref'd) (mem. op., not designated for publication) ("Because Thornburg's motion to suppress and his argument at the suppression hearing centered on whether there was consent to search his apartment, he forfeited his complaint on appeal that the search was not justified by other exceptions to the warrant requirement, such as the plain-view doctrine and exigent circumstances."); *Jones v. State*, No. 02-12-00360-CR, 2014 WL 3953788, at *2 (Tex. App.—Fort Worth Aug. 14, 2014, no pet.) (mem. op., not designated for publication) ("Jones . . . forfeited his claim because his appellate argument does not comport with the arguments he raised in his motion to suppress."). Global assertions of constitutional violations in a written motion to suppress do not preserve tailored appellate arguments when those arguments are

10

different than the specific complaints made in a suppression hearing. *See Swain*, 181 S.W.3d at 365; *Reyes v. State*, 361 S.W.3d 222, 231 (Tex. App.—Fort Worth 2012, pet. ref'd).

McGee's written motion to suppress contained global assertions of constitutional violations; nothing in the motion alerted the trial court to a complaint that his detention was improper because Officer Leonard handcuffed him. At the beginning of the suppression hearing, the State and McGee agreed that the purpose of the suppression hearing was the "issue of the officer . . . going into Mr. McGee's pocket to obtain what, essentially, is the main evidence in this case, which would be the drugs." In McGee's argument at the end of the hearing, his theory of suppression focused on the initiation of the detention, not its scope:

> [T]he defendant's position is that there was no . . . evidence in the record to show that Officer Leonard had any right to conduct a brief investigative detention of the defendant. There's not any knowledge of him being involved in any kind of criminal activity in the past . . . . There's not any evidence that was in the record at this point that showed that the defendant was involved in any criminal activity or [was] soon to be engaged in any criminal activity. As a result, the . . . frisk was invalid to begin with.

We conclude that McGee did not apprise the trial court of his complaint that Officer Leonard exceeded the scope of a permissible investigative detention by handcuffing him. Because McGee's argument in that respect does not comport with his trial-court complaint, we overrule it. *See* Tex. R. App. P. 33.1(a); *Swain*, 181 S.W.3d at 365; *see also Smith v. State*, 532 S.W.3d 839, 841 (Tex. App.—Amarillo 2017, no pet.)

11

("[T]he grounds [for suppression] urged below do not comport with those urged on appeal, and that effectively waives the latter as basis for reversal.").

For all of these reasons, we overrule McGee's first issue.

**The seizure of the methamphetamine from McGee's pocket**

In his second issue, McGee contends that the trial court should have granted his motion to suppress because Officer Leonard seized the methamphetamine through a warrantless search without probable cause. The State asserts that under *Terry*, Officer Leonard's investigatory detention based on reasonable suspicion permitted him to frisk McGee for weapons and that because Officer Leonard knew that McGee had a second knife, his search for that knife in McGee's pocket, which led to the discovery of the methamphetamine, was permissible.

Once a police officer has lawfully detained a suspect based on reasonable suspicion of criminal activity, the officer may conduct a limited search for weapons, or a "protective frisk," when a frisk is reasonably warranted for the officer's safety or for the safety of others. *Elliot v. State*, 548 S.W.3d 121, 126–27 (Tex. App.—Fort Worth 2018, pet. ref'd). A frisk for weapons without a warrant is justified when specific and articulable facts, taken together with rational inferences from those facts, could reasonably lead to the conclusion that the suspect might possess a weapon. *Id.* at 127. Such a protective frisk generally extends only to a suspect's outer clothing, but when the officer reasonably believes that a defendant has a weapon in his pocket, the officer may reach into the pocket. *Balentine v. State*, 71 S.W.3d 763, 769–70 (Tex. Crim.

12

App. 2002); *see Elliot*, 548 S.W.3d at 127–28 (holding that an officer's reach into a suspect's pocket was permissible when the officer patted down the outside of the pocket, felt a dense object with sharp angles, and was concerned that the object was a weapon or contained a weapon).

If during the course of a valid frisk the officer feels or sees an item that is immediately apparent as contraband, the officer may seize the item. *Minnesota v. Dickerson*, 508 U.S. 366, 375–76, 113 S. Ct. 2130, 2137 (1993); *Griffin v. State*, 215 S.W.3d 403, 410 (Tex. Crim. App. 2006); *Wilson v. State*, 132 S.W.3d 695, 700 (Tex. App.—Amarillo 2004, pet. ref'd) ("[O]nce [a] basis exists that warrants a frisk for weapons, the officer is not required by law to close his eyes to other contraband that he may immediately recognize during the minimally intrusive search."). This "immediately apparent" standard does "not require actual knowledge by the officer of incriminating evidence"; it is "not essential that the officer's belief be correct or more likely true than false." *Lopez v. State*, 223 S.W.3d 408, 417 (Tex. App.—Amarillo 2006, no pet.); *see Jackson v. State*, No. 01-89-00781-CR, 1990 WL 93146, at *2 (Tex. App.—Houston [1st Dist.] July 5, 1990, no pet.) (not designated for publication) (stating that "immediately apparent" does not equate to "nearly certain").

When Officer Leonard detained McGee, the hospital's security guard told Officer Leonard that McGee had a pocket knife clipped to his right pocket, and Officer Leonard saw that knife and seized it. McGee does not appear to complain about that seizure. According to Officer Leonard's testimony, McGee then told him

13

that he had another knife in a pocket,[10] and when Officer Leonard reached into McGee's left pocket for the purpose of retrieving the second knife,[11] he felt and saw the baggie containing methamphetamine. We conclude that based on Officer

---

[10]McGee asks us to disbelieve this part of Officer Leonard's testimony. He reasons that his telling Officer Leonard that he had a second knife and then turning away from Officer Leonard when he reached for it "defies common sense." We decline to second-guess the trial court's implicit finding that Officer Leonard's testimony was credible. *See Wiede*, 214 S.W.3d at 24–25.

[11]The following exchange occurred during the suppression hearing:

[THE STATE:] I just want to make sure your testimony is clear. You [went] into his left pocket to try to retrieve the [second] knife; is that correct?

A. Yes.

Q. And in the course of that is when you find this baggie?

A. Yes.

Q. And you eventually find a knife?

A. Yes.

. . . .

. . . After checking the outside of his pocket and not identifying -- quickly identifying what would be a pocket knife because he had something else in his pocket, I went to go put my hand in his pocket, and in doing so, I was able to see the baggie after I already told him that I was going to retrieve the knife he said he had.

. . . .

Q. . . . What was the purpose of going into the defendant's left pocket?

A. To secure the knife that he stated he had.

14

Leonard's testimony that McGee told him he had a second knife inside his pocket, Officer Leonard reasonably reached into the pocket to seize the knife. *See Balentine*, 71 S.W.3d at 769–70; *Elliot*, 548 S.W.3d at 127–28.

McGee argues, however, that Officer Leonard violated his constitutional rights by removing the baggie that he felt and saw upon placing his hand in McGee's pocket. He argues, "[I]n neither his suppression hearing [testimony] nor trial testimony did Officer Leonard claim that he observed the contents of the baggie prior to removing it from [McGee's] pocket. . . . [T]here was no reason to seize the plastic bag from [his] pocket." McGee contends, "Having gone into [McGee's] pocket for the purpose of retrieving a pocket knife, [Officer Leonard] exceeded constitutional authority by removing a baggie and its then unknown contents from [McGee's] pocket."

Officer Leonard testified that when he *saw* the baggie, he knew from his experience (including making "about 100" narcotics arrests) and training that it likely contained illegal drugs. He further testified that he *felt* what was immediately apparent to him to be illegal narcotics. The trial court implicitly found this testimony credible by denying McGee's motion to suppress. Accordingly, deferring to the trial court's implicit finding—*see Amador*, 221 S.W.3d at 673—we hold that Officer Leonard's immediate recognition of a baggie containing illegal narcotics during his frisk for the second knife within McGee's pocket authorized his seizure of the baggie. *See Griffin*, 215 S.W.3d at 410; *Johnson v. State*, No. 11-15-00053-CR, 2017 WL 1276364, at *3

15

(Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op., not designated for publication).

For all of these reasons, we overrule McGee's second issue.

## Conclusion

Having overruled both of McGee's issues, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 10, 2019