Michael Lee GRIMM, Appellant

v.

The STATE of Texas, Appellee

NO. 14–15–00284–CR

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed June 21, 2016

Greg Russell, Galveston, TX, for Appellant.

Allison Lindblade, Galveston, TX, for State.

Panel consists of Justices Christopher, McCally, and Busby.

## OPINION

Tracy Christopher, Justice

This is an appeal from a conviction for unlawfully possessing more than fifty items of identifying information. Appellant raises two issues: (1) whether the evidence is legally sufficient to support his

conviction, and (2) whether the trial court reversibly erred by admitting certain exhibits over his hearsay objection. We conclude that the evidence is sufficient and that the trial court did not err by admitting the challenged exhibits. We therefore affirm the trial court's judgment.

## BACKGROUND

Police received a report of suspicious activity at a hotel. When they arrived at the hotel, police were taken to a room, where they found torn pieces of paper, including stationary that contained a date of birth, a social security number, and an address. The room was registered to a woman named Jennifer, but payment had been arranged by appellant. Neither Jennifer nor appellant was present when police entered the room. Two women named Haven and Felicia were occupying the room instead. One of the women had appellant's wallet, which contained "a multitude of credit cards," and not all of the credit cards were in appellant's name.

Police tracked down appellant later that day and persuaded him to come to the station for questioning. His interview was recorded on video. During the interview, one of the investigators said that he suspected appellant of being involved "in some form or fashion" with "financial crimes and fraud." Appellant responded, "I'm not going to disagree." Appellant then explained, without discussing any specifics, that he became associated with the wrong crowd and that he "advised" and "shared information on how to do things." Appellant indicated that Haven and Felicia were part of that wrong crowd.

Later during the interview, appellant said that he once applied for a loan in another person's name. Appellant denied that he ever obtained the funds from this loan. He explained that he submitted the application just to "piss off a bank."

Appellant also admitted that he possessed credit cards that were in the names of a friend and a business client. Appellant said that he activated these cards after they were mailed to his address, even though he knew that he did not have permission to activate them.

Towards the end of the interview, appellant disclosed that he had seen the investigators at the hotel earlier that day. Appellant explained that he had left the hotel to pick up his son, and that he returned to his room to retrieve his wallet. Appellant said that when he saw police entering his room on his return trip, he turned around because he knew there was a chance that he might be arrested, and he did not want his son to be exposed to that.

Police released appellant from the interview without bringing charges, but a few months later, they brought him back into custody. In his second recorded interview, appellant admitted that he had been telling the investigators "half-truths." Appellant said that he had taught himself the Luhn algorithm, which is a mathematical formula that tests the validity of credit card numbers. Appellant revealed that he created credit card numbers with this algorithm and that he used those numbers to obtain services at hotels and limousine companies. Appellant also demonstrated how he could call a toll-free hotline to verify that his credit card numbers would work.

Police obtained warrants to search appellant's property and personal effects. On appellant's laptop, police found a document entitled "How to make a Fake ID," as well as a cache of templates for creating driver's licenses and other forms of identi-

fication. Appellant's Internet search history also included such searches as "How to get around credit froud [sic] alerts" and "How to get fake pay stubs."

On appellant's cellphone, police found a text message in which appellant gave away a credit card number to a friend. The friend responded, "Hey man, is there any way I am going to get in trouble? ... And whose card/name?" Appellant replied, "You can use any name for the card. Use [D.P.], and make up [an] address." In another text message, appellant stated, "I want to make a card."

In appellant's apartment and storage unit, police found a trove of documents containing the personal identifying information of other people. These documents included more than forty RV rental applications. Other documents included personal checks, credit card statements, utility bills, and medical bills.

Appellant was indicted for possessing more than fifty items of identifying information. He was not indicted for the fraudulent use of that information. At his trial, the State called Wendell Weger, who testified that he once owned an RV rental business. The applications found in appellant's possession belonged to that same business. Weger testified that, before he sold his business, he was approached by appellant, who wanted to become the owner of a franchise in The Woodlands. Weger allowed appellant to work at the franchise temporarily, but Weger insisted that appellant was not allowed to remove records from the office. Weger also testified that appellant never bought the franchise or became a franchise owner. Weger explained that negotiations collapsed after appellant took an RV for personal use.

Four other witnesses testified that appellant possessed their identifying information. One witness testified that appellant had his personal checks. The three other witnesses testified that appellant had fake driver's licenses with their name and either their address or date of birth. All three of these last witnesses testified that they had once rented an RV. Two of the witnesses referred to Weger's RV business by name, and the third referred only to "a facility in The Woodlands."

Appellant testified in his own defense. He had different explanations for different documents. Appellant testified that he opened his home to criminals and drug addicts. He said that some of the documents seized in this case were brought to his home by these other people.

Appellant admitted that he had created the fake driver's licenses. He explained that he made those IDs when he was in one of his "meth states" and "just simply, you know, messing around."

As for the RV rental applications, appellant testified that he possessed those documents "legitimate[ly]" and "under the purest intentions." Disputing Weger's testimony, appellant claimed that he had been the owner of the RV rental franchise in The Woodlands. Appellant said that, in consideration for the franchise, he gave Weger $10,000, a motorcycle, and an assignment of his profits to cover the remaining balance of the investment. Appellant said that this business relationship dissolved over time, and that both parties had agreed to part ways. During his period of purported ownership, appellant testified that the rental applications were his to keep, and that he did not need Weger's permission to remove them from the office. Appellant explained that he took the rental applications in an effort to digitize the franchise's records.

## SUFFICIENCY OF THE EVIDENCE

■■■ *Standard of Review.* When reviewing the sufficiency of the evidence, we

examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim.App.2013). The evidence is legally insufficient when the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense. *See Garcia v. State*, 367 S.W.3d 683, 687 (Tex.Crim.App.2012).

 Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment *for that of the fact finder. See Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). Our review includes both properly and improperly admitted evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim.App.2007). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).

 *The Offense.* To obtain a conviction in this case, the State was required to prove each of the following elements: (1) appellant possessed an item of identifying information belonging to another person, and the total number of items was fifty or more; (2) appellant possessed each item without the other person's consent; and (3) appellant possessed each item with the intent to harm or defraud the other person. *See* Tex. Penal Code § 32.51(b)(1), (c)(4). We examine these elements separately.

*Fifty or More Items.* "Identifying information" is defined as:

[I]nformation that alone or in conjunction with other information identifies a person, including a person's:

(A) name and date of birth;

(B) unique biometric data, including the person's fingerprint, voice print, or retina or iris image;

(C) unique electronic identification number, address, routing code, or financial institution account number;

(D) telecommunication identifying information or access device; and

(E) social security number or other government-issued identification number.

*Id.* § 32.51(a)(1).

 An "item of identifying information" does not refer to the individual record where the information appears. *See Cortez v. State*, 469 S.W.3d 593, 602 (Tex. Crim.App.2015) (rejecting an argument that an item requires the grouping of information into an individual record). Rather, an item of identifying information means "any single piece of personal, identifying information" that alone or in conjunction with other information identifies a person. *Id.* Depending on the circumstances, an individual record may actually contain more than one item of identifying information. *See, e.g., id.* at 603 (explaining how a personal check contained two items of identifying information).

In this case, only four witnesses testified that appellant had their personal, identifying information. One witness testified that appellant possessed his checks, which contained the witness's name, address, and bank account number. The other three witnesses testified that appellant had their identifying information on fake driver's licenses. The evidence showed that the photographs on the driver's licenses were not true, but the names were accurate, along with either the witness's address or date of birth.

Appellant acknowledges that when this evidence is viewed in the light most favorable to the verdict, it establishes that he possessed some items of identifying information. However, he contends that this evidence is insufficient to show that he possessed fifty or more items of identifying information. The State responds that the evidence is sufficient if the RV rental applications are considered. In fact, the State contends that the applications alone contained more than fifty items of identifying information.

The State produced more than forty RV rental applications, all of which had been discovered in appellant's possession. Each of these applications contained the name of a different applicant, along with various forms of items of identifying information, such as the applicant's date of birth, driver's license number, social security number, and credit card number. Each application contained at least two of these items. Most had all four. When grouped together, the RV rental applications represented more than fifty items of identifying information.

Appellant argues that these applications are insufficient because none of the applicants testified at trial. Without such live testimony, appellant contends that there is no proof that the applicants were "living, breathing human beings." Drawing a comparison to the fake driver's licenses, appellant points out that the information on the applications may have been false or fraudulent, and therefore, not belonging to a real person.

Appellant's argument in this court diverges from his defensive theory at trial, which is that the applicants were real people, and that his possession of their information was "legitimate." At trial, appellant actually referred to the applicants as his former "clients."

During cross-examination, appellant provided additional testimony from which the jury could have reasonably concluded that the applicants were real:

Q. And in your house you have document after document after document with other people's information on it, right?

A. Yes, I do have business documents with a lot of people's information on it, right.

Q. But they weren't all business files because sometimes the girls would bring stuff over and you just kept them, right?

A. If you are talking about stuff outside of the [RV rental franchise], that's correct.

Appellant never equivocated on the authenticity of the applications or of the information they contained. The jury was free to credit appellant's own testimony and find that all of the applicants were real people.

That finding is also supported by testimony from Weger, who indicated that the applications were completed by the applicants themselves. Weger explained: "The

way it worked at our place you walked into The Woodlands and you rented an RV, you filled out what's called a booking application. It's basically a contract saying you are going to rent an RV." Weger also testified that his standard business practice was "to make sure that these are real people renting [his] RVs."

Based on the testimony from appellant and Weger, the jury could have reasonably found that the applications were completed by real people, who gave their identifying information in good faith. Viewed in the light most favorable to the verdict, the evidence supports a finding that appellant possessed more than fifty items of identifying information.

■■■■■ *Without Consent.* "Consent" means assent in fact, whether express or apparent. *See* Tex. Penal Code § 1.07(11). For assent in fact to occur, there must be an actual or real agreement after thoughtful consideration. *See Baird v. State,* 398 S.W.3d 220, 229 (Tex.Crim.App.2013). For there to be apparent consent, the assent must be clear and manifest to the parties' understanding, despite there being no express communication. *Id.*

Of the four witnesses who testified that appellant possessed their identifying information, two specifically stated that they had not given consent to appellant to possess or use their information. The evidence permits an inference that the other two witnesses had not given their consent either because both witnesses testified that they had never met appellant before. Also, appellant admitted that he created fake IDs using those two witnesses' personal information.

Appellant suggests again that the evidence is insufficient to support a conviction because no other person presented live testimony regarding the element of consent. Appellant particularly focuses on the absence of testimony from those persons named in the RV rental applications.

■■■■■ "But the question is not what evidence there isn't, it's what evidence there is." *Acosta v. State,* 429 S.W.3d 621, 630 (Tex.Crim.App.2014). Because a conviction may be had on circumstantial evidence, there is no requirement that the proof must point directly and independently to each element of the offense. *Id.* at 625. The trier of fact may convict the defendant "if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Id.* Additionally, the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence. *Id.*

There was ample evidence from which the jury could have reasonably deduced that appellant did not have the consent of the applicants to possess their identifying information. When viewed in the light most favorable to the verdict, the evidence showed the following:

- Appellant was not a franchise owner of the RV rental business, where the applications originated;

- He did not have permission from the franchise owner to remove any records from the franchise;

- The applications were found in the living room of his apartment, rather than in a secure office setting;

- More than half of the applications predated the period in which he worked at the franchise; and

- He misappropriated the identifying information of at least two individu-

als who previously rented an RV from the franchise.

The cumulative force of this evidence supports a finding that appellant possessed the applications and the identifying information they contained without the actual or apparent consent of the persons named in the applications.

 *Intent to Harm or Defraud.* The law presumes that the defendant has the intent to harm or defraud another if the defendant possesses the identifying information of three or more other persons. *See* Tex. Penal Code § 32.51(b–1)(1); *see also Ramirez–Memije v. State*, 466 S.W.3d 894, 897 (Tex.App.–Houston [14th Dist.] 2015, no pet.) (addressing how this presumption may be given in a jury charge). Even without the presumption, the record contained sufficient evidence to support a finding of this essential element. Specifically, the jury could have determined that appellant had the intent to harm or defraud another based on the following evidence:

- Appellant had credit cards in his wallet that did not belong to him;

- He applied for a bank loan using another person's name;

- He activated credit cards that were addressed to other people, even though he knew that he did not have permission to do so from those other people;

- He taught himself the algorithm needed to craft fake credit card numbers;

- He used those fake credit card numbers at hotels and limousine companies, knowing those businesses would not be paid;

- He had a document on his laptop, which instructed him on how to cre-

ate fake IDs, as well as the templates needed to make fake IDs;

- He gave away a fake credit card number to a friend, with instructions on how to use it; and

- He admitted that he created fake IDs.

We conclude that there is legally sufficient evidence to support every essential element of the offense.

## HEARSAY OBJECTION

 In his second issue, appellant complains about the admission into evidence of the RV rental applications and one of the fake driver's licenses. All of these exhibits were introduced together, and the sponsoring witness was the detective who discovered them in the living room of appellant's apartment. Appellant objected that the exhibits constituted inadmissible hearsay. The prosecutor responded: "I am not offering them for the truth of the matter asserted, Your Honor, I am offering them for the—instead what is said, not what is asserted inside them. I am showing identifying information." The trial court admitted the exhibits over appellant's objection. Appellant did not request a limiting instruction.

 We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *See Shuffield v. State*, 189 S.W.3d 782, 793 (Tex.Crim.App.2006). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *See State v. Mechler*, 153 S.W.3d 435, 439 (Tex.Crim.App.2005). We examine the trial court's decision in light of what was before the trial court at the time the decision was made. *See Weatherred v.*

*State,* 15 S.W.3d 540, 542 (Tex.Crim.App. 2000). The trial court's decision will be upheld if it is reasonably supported by the record and correct under any theory of law applicable to the case. *See Willover v. State,* 70 S.W.3d 841, 845 (Tex.Crim.App. 2002).

Hearsay is defined as an out-of-court statement, whether oral or written, that is offered into evidence for the truth of the matter asserted. *See* Tex.R. Evid. 801(d). A statement that is offered for a reason other than the truth of the matter asserted is not hearsay. *See Guidry v. State,* 9 S.W.3d 133, 152 (Tex.Crim. App.1999).

Appellant focuses primarily on the RV rental applications. He argues that these applications must have been offered for the truth of their contents because none of the applicants testified at trial. We disagree.

Possession is an element of the offense, and the State introduced the exhibits after the detective testified that he discovered them in the living room of appellant's apartment. The trial court could have reasonably determined that the exhibits were being offered because they were probative of what appellant possessed. That purpose does not hinge on the truth of the exhibits' contents. Indeed, the detective did not testify that the contents of the exhibits were true. That point would be established circumstantially by Weger, whose testimony came later in the trial, once the foundation had first been laid that appellant possessed the RV rental applications. And to the extent that the applications contained hearsay, Weger established their admissibility as business records. *See* Tex.R. Evid. 803(6).

We also note that a fake driver's license was counted among the exhibits sponsored by the detective. The State was clearly not offering this exhibit for the truth of its contents, which were later shown to be false. This point supports the conclusion that the exhibits were offered for a purpose other than the truth of the matter asserted. The trial court did not abuse its discretion by admitting the exhibits over appellant's hearsay objection. *See Dinkins v. State,* 894 S.W.2d 330, 347 (Tex. Crim.App.1995) ("An extrajudicial statement or writing which is offered for the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay.").

## CONCLUSION

Having concluded that the evidence is sufficient to support the conviction and that the trial court did not err in admitting the challenged exhibits, we affirm the trial court's judgment.