

# NUMBER 13-23-00037-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**MARCO RODRIGUEZ**                                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

## ON APPEAL FROM THE 347TH DISTRICT COURT
## OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña
Memorandum Opinion by Justice Longoria**

A jury found appellant Marco Rodriguez guilty of fraudulent use or possession of ten or more but fewer than fifty items of identifying information, committed against an elderly individual, a first-degree felony. *See* TEX. PENAL CODE ANN. § 32.51(c)(3), (c-1)(1).

The State sought to enhance the punishment range to a minimum of twenty-five years due to Rodriguez's prior felony convictions. *See id.* §§ 12.42(d). The jury found the enhancement allegation to be true and sentenced Rodriguez to twenty-eight years in prison. By four issues, which we address as two, Rodriguez challenges the sufficiency of the evidence and the denial of his motion to suppress. We affirm.

## I.     BACKGROUND

Corpus Christi Police Department (CCPD) Officer Vince Gutierrez testified that he was patrolling a "high drug trafficking and gang activity" area known as "Tequare" when he observed Rodriguez riding a bicycle at approximately 1:00 a.m. Officer Gutierrez stated that he noticed "there was no red light emitting from the bicycle," so he stopped Rodriguez. Over objection, video footage from Officer Gutierrez's patrol unit's dash camera was admitted into evidence. The video showed Officer Gutierrez approaching Rodriguez in his patrol unit. Rodriguez stops his bicycle as Officer Gutierrez exits his patrol unit. Rodriguez quickly turned on his rear light when Officer Gutierrez informed him that it was out. Officer Gutierrez then performed a pat down of Rodriguez. Officer Gutierrez testified that the pat down was done for officer safety and that, if an officer has reason to believe a person may have a weapon on them, they will conduct a pat down. He confirmed that he believed Rodriguez may have had a weapon on him given the circumstances of where he was located and the time of day. After discovering a knife in Rodriguez's pocket, Officer Gutierrez asked for consent to search Rodriguez. Rodriguez hesitated in his answer, but ultimately allowed the search. During the search, Officer Gutierrez discovered "[b]lank checks" and "identifying information such as ID cards, credit cards, [and] debit cards" on Rodriguez's person.

2

On cross-examination, Officer Gutierrez reiterated that he stopped Rodriguez because he did not see a red light emanating from the rear of Rodriguez's bicycle. After reading the section of the transportation code associated with bicycle lighting, Officer Gutierrez agreed that Rodriguez could have legally had a red light or a reflector, but he was not aware if Rodriguez had a reflector on his bicycle. Officer Gutierrez did not photograph the bicycle and did not recall if it was impounded or released to Rodriguez's wife, who arrived at the scene at some point prior to his arrest. Officer Gutierrez could not recall the details of the items he turned over to Rodriguez's wife, nor did he document that information in his report.

Officer Gutierrez testified that he placed Rodriguez in the back of his police car, uncuffed. He explained that Rodriguez was being detained while an investigation was done to determine where the miscellaneous items came from. Officer Gutierrez admitted that he did not read Rodriguez his *Miranda* warnings, but he did proceed to question him about the items found in Rodriguez's possession. While Rodriguez claimed to have found the items, Officer Gutierrez testified that it was his duty to investigate further to determine whether the items were stolen.

Detective Doug McDonald with the CCPD financial crimes department photographed the items that were discovered in Rodriguez's possession and made a file for the case. He attempted to contact the rightful owners of the property and through his investigation, he was able to learn that one of the people, Kimberly S. Perez, had been the victim of a theft. He explained that there are dangers associated with someone having possession of another's credit cards, blank checks, or identifying information such as compromised accounts, loss of money, identity theft, and access to personal information.

3

Detective McDonald testified that Rodriguez did not need to use the identifying information to commit a crime and that possession of the information is enough. In his experience, a person in possession of the amount of identifying items that Rodriguez had typically uses those items "for credit card abuse, withdrawals from banks, applying for credit, things of that nature." He agreed that the items could also be used as "commerce for narcotics."

On cross-examination, Detective McDonald explained that the intent to defraud is presumed when a person possesses three or more items of identifying information. He was unable to verify the ownership of the credit and debit cards. Through his investigation, he was only able to confirm that Perez had been the victim of theft; he was unable to contact any other victims to confirm whether Rodriguez had permission to possess the items.

The State presented four witnesses whose identifying information was found on Rodriguez's person. Matthew Evans testified that he did not know Rodriguez and never gave Rodriguez his Texas ID card or social security card. He admitted he was not aware that the items were stolen, but he recalled having his wallet when he got on a bus and not having it on his person when he got off. He agreed that he might have lost the wallet. To his knowledge, there was no illicit use of his identifying information.

Ismael Hernandez testified that he did not know Rodriguez and that he did not know how Rodriguez came into possession of his Texas driver's license. Hernandez stated that he had once lost his wallet, but that was about ten years prior to trial and the license in question was not in that wallet. He was not aware that his license was missing, though he noted that he has had to renew his license a few times to change addresses.

4

To his knowledge, he has not been the victim of identity theft in any way.

Fred Narvaez testified that he was sixty-nine years' old at the time of trial. He was "acquainted" with Rodriguez, but said it was "temporary" and that he had not seen Rodriguez in three or four years. He stated that he never gave Rodriguez possession of his credit or debit card, nor did Rodriguez have permission to have the bank card.

Kimberly Perez testified that the blank checks found in Rodriguez's possession had her name on them, but she did not have an account associated with USAA Bank, nor was the address listed her own. Perez explained that her mother had an account with USAA Bank and that she was a user on the account, but that she believed any checks on that account would have also contained her mother's name. She stated that she did not know Rodriguez, nor did she give him any checks, debit cards, or identifying information. On cross-examination, she stated that she was unsure whether the checks belonged to her or whether they were from a different Kimberly Perez.

The jury found Rodriguez guilty and, finding the enhancement paragraph true, sentenced him to a term of twenty-eight years' incarceration. This appeal followed.

## II.    SUFFICIENCY

By his first two issues, Rodriguez argues that the evidence was insufficient to support his conviction.

### A.    Standard of Review & Applicable Law

We review the sufficiency of the evidence by considering "all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hammack v. State*, 622 S.W.3d 910, 914 (Tex.

5

Crim. App. 2021); *see Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). The jury is the sole judge of witnesses' credibility and weight to be given the evidence presented, and we defer to those conclusions. *Hammack*, 622 S.W.3d at 914 (citing *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012)). We look to the "events occurring before, during[,] and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* at 914–15. Not every fact or piece of evidence needs to point directly to appellant's guilt, so long as the cumulative force of all the evidence supports the convictions. *Id.* at 914. "Juries are permitted to draw reasonable inferences from the evidence presented at trial 'as long as each inference is supported by the evidence presented at trial.'" *Carter v. State*, 620 S.W.3d 147, 150 (Tex. Crim. App. 2021) (quoting *Hooper*, 214 S.W.3d at 15).

We measure the sufficiency of the evidence by the elements of an offense as defined by a hypothetically correct jury charge. *Hammack*, 622 S.W.3d at 914. "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

Conviction for fraudulent use or possession of ten or more but less than fifty items of identifying information, committed against an elderly individual, requires proof that:

6

(1) appellant possessed an item of identifying information belonging to another person, and the total number of items was ten or more but less than fifty; (2) appellant possessed each item without the other person's consent; (3) appellant possessed each item with the intent to harm or defraud the other person; and (4) the offense was committed against an individual sixty-five years of age or older. *See* TEX. PENAL CODE ANN. § 32.51(b)(1), (c)(3), (c-1)(1); *Grimm v. State*, 496 S.W.3d 817, 822 (Tex. App.—Houston [14th Dist.] 2016, no pet.). On appeal, Rodriguez challenges the sufficiency of the evidence supporting the number of items of identifying information and the intent to defraud.

**B.     Items of Identifying Information**

Rodriguez first challenges the evidence supporting the number of pieces of identifying information, arguing that the State "produced three witnesses who identified a total of four items of identifying information." In his view, only four (not ten or more) items of identifying information were entered as evidence by the State.

"Identifying information" is defined in § 32.51 of the Texas Penal Code as:

[I]nformation that alone or in conjunction with other information identifies a person, including a person's:

(A) name and date of birth;

(B) unique biometric data, including the person's fingerprint, voice print, or retina or iris image;

(C) unique electronic identification number, address, routing code, or financial institution account number;

(D) telecommunication identifying information or access device; and

(E) social security number or other government-issued identification number.

TEX. PENAL CODE ANN. § 32.51(a)(1).

The Texas Court of Criminal Appeals has held that an "item of identifying information" refers not to the individual record where the information appears—such as a license, credit card or document—but rather to any single piece of personal, identifying information that alone or in conjunction with other information identifies a person. *Cortez v. State*, 469 S.W.3d 593, 602 (Tex. Crim. App. 2015); *Grimm*, 496 S.W.3d at 822. Thus, an individual record such as a personal check could constitute two items of identifying information if it contained (1) a person's name and driver's license number, and (2) a bank account number and bank routing number. *Cortez*, 469 S.W.3d at 603 (noting that under § 32.51(a)(1), a person's name and driver's license number together would count as a single "item" of identifying information and similarly, a bank account number and bank routing number would count as a single "item" because only by combining those two numbers do they become information identifying a person); *see also Vadnais v. State*, No. 03-14-00578-CR, 2017 WL 474059 at *6 (Tex. App.—Austin Jan. 31, 2017, pet. ref'd) (mem. op., not designated for publication).

Here, Officer Gutierrez testified that he found numerous items of identifying information on Rodriguez's person. The State presented three witnesses at trial who testified about their personal, identifying information that Officer Gutierrez had recovered. Evans testified that his Texas ID and his social security card were recovered by CCPD. Hernandez testified that he had previously lost his wallet and that the Texas driver's license recovered by CCPD was his. Narvaez testified that the debit/credit card found with his name on it was his. All three witnesses testified that Rodriguez did not have consent to have their personal identifying information.

Based on the evidence presented from these witnesses alone, the State presented

8

the jury with eight items of identifying information, all of which were found in Rodriguez's pocket. *See* TEX. PENAL CODE ANN. §32.51(a)(1). There were three items belonging to Evans: (1) his name and date of birth; (2) his name and address; and (3) his government-issued ID number. *See id.*; *Cortez*, 469 S.W.3d at 607 (concurring opinion; counting items of identifying information). There were an additional four items of identifying information belonging to Hernandez: (1) his name and date of birth; (2) his name and address; (3) his government-issued driver's license number; and (4) his social security number. *See* TEX. PENAL CODE ANN. §32.51(a)(1); *Cortez*, 469 S.W.3d at 607. Additionally, there was one item of identifying information for Narvaez, his credit card number. *See* TEX. PENAL CODE ANN. §32.51(a)(1); *Grimm*, 496 S.W.3d at 823. Rodriguez acknowledges that this may establish that he possessed some items of identifying information, but he contends the evidence is insufficient to show that he possessed ten or more items of identifying information.

The State responds that it also elicited testimony from Perez that the blank checks contained her first and last name along with her middle initial, but that she did not have an account through USAA and the address listed was not, nor had it ever been, hers. Furthermore, the State produced five additional credit or debit cards with five different names and an additional social security card and Texas driver's license belonging to other individuals. The State did not present testimony from these individuals.

Rodriguez argues that this evidence does not establish he had ten or more items of identifying information. He notes that, aside from confirming her name, Perez stated the account information and address were not hers, nor had they ever been hers. As to the remaining items, Rodriguez argues there was no testimony to prove that the items

9

were real credit or debit cards or information belonging to real people. Perez stated that the name on the checks matched her name, but there were no other identifying pieces of information on the blank checks that belonged to her. However, Detective McDonald testified that when he spoke to Perez, she "stated that that was her account" and confirmed the checks were hers and that he had taken a recorded statement from her confirming the same. While Perez's testimony contradicted that of Detective McDonald's, when faced with conflicting evidence, we presume the jury resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993); *see Tucker v. State*, 150 S.W.2d 1025, 1029 (Tex. Crim. App. 1941) (noting that jury was entitled to avail itself of adage "false in one, false in all" as to witness's testimony and apparently did so, crediting nothing she said on stand). Accordingly, we include the two blank checks in the number of items of identifying information established by the evidence. It has been held that a blank check can contain as many as four items of identifying information:

> For instance, if an accused possessed one check on which appeared 1) a unique electronic identification number, 2) the address of the account owner, 3) a routing code, and 4) the financial institution account number, appellant would have us conclude that the accused possessed only one item of identifying information. The State, however, would argue that the accused possessed four items of identifying information under that scenario. [W]e agree with the State.

*Cortez v. State*, 428 S.W.3d 338, 341 (Tex. App.—Amarillo, 2014 pet. granted), *aff'd*, 469 S.W.3d 593 (Tex. Crim. App. 2015). Here, the blank checks contained: (1) the name and address of the account holder; (2) the routing number; and (3) the account number. These three items of identifying information taken with the eight items previously discussed brings the total number to eleven items of identifying information. As such, we need not

10

address the remaining debit or credit cards because the State presented evidence of more than ten items of identifying information. *See* TEX. PENAL CODE ANN. § 32.51(c)(3).

## C.     Intent

Rodriguez also challenges the evidence supporting the element of intent, though he does so through two sentences with no citations to authority or any legal analysis. He states: "On the issue of intent, the presumption that Rodriguez intended to harm or defraud the rightful owners, was rebutted by the State's own evidence that Mr. Hernandez's license was missing for approximately ten years without incident of misuse. Same for Mr. Evans and Mr. Narvaez." We find this argument to be inadequately briefed. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Furthermore, the statute itself states that the actor is presumed to have the intent to harm or defraud another if the actor possesses the identifying information of three or more other persons. TEX. PENAL CODE ANN. § 32.51(b-1)(1). That burden was met here.

## D.     Conclusion

Having found that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we overrule Rodriguez's first issue.

## III.     MOTION TO SUPPRESS

By his third and fourth issues, Rodriguez argues that the trial court erred in denying his motion to suppress on the basis that "the actions of the [CCPD] violated [his] constitutional and statutory rights." Specifically, Rodriguez complains on appeal that his Fourth and Fourteenth Amendment rights were violated, and the trial court should have excluded the evidence under Texas Code of Criminal Procedure Article 38.23(a). *See*

11

U.S. CONST. amends. IV, XIV; TEX. CODE CRIM. PROC. ANN. art. 38.23.

## A.  Standard of Review & Applicable Law

**"**An appellate court applies a bifurcated standard of review to a trial court's ruling on a motion to suppress." *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017) (cleaned up). "We afford almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor." *Id.* "On the other hand, we apply a de novo standard of review to the legal significance of the facts as found by the trial court." *Id.* "When findings of fact are not entered, as here, we must view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id.* at 35–36 (internal quotations omitted). In cases in which the trial court is never asked, or is asked but declines, to exercise its discretionary authority to reopen the suppression hearing, appellate review of its ruling on the motion to suppress is ordinarily limited to that evidence presented at the pretrial hearing—the evidence that was before the court at the time of its decision. *Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. U.S. CONST. amends. IV, XIV. A pat-down for weapons—known as a *Terry* frisk—constitutes a search within the meaning of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 19 (1968). An officer is constitutionally justified in frisking an individual he has lawfully detained if a reasonably prudent person would be warranted in the belief that the individual was armed and that "[the officer's] safety or that of others was in

12

danger." *Id.* at 27; *Lerma v. State*, 543 S.W.3d 184, 191 (Tex. Crim. App. 2018); *Furr v. State*, 499 S.W.3d 872, 878 (Tex. Crim. App. 2016); *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000). The officer "need not be absolutely certain that the individual is armed"; he need only possess specific and articulable facts which, together with reasonable inferences from those facts, in light of the officer's experience, reasonably lead him to conclude that the detained individual might possess a weapon. *Terry*, 392 U.S. at 21–27; *Lerma*, 543 S.W.3d at 191; *Furr*, 499 S.W.3d at 878; *see also Seymore v. State*, No. 02-19-00486-CR, 2021 WL 2252751, at *5 (Tex. App.—Fort Worth June 3, 2021, pet. ref'd) (mem. op., not designated for publication).

"Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual [subjective] state of mind at the time the challenged action was taken." *O'Hara*, 27 S.W.3d at 551 (internal quotation marks omitted) (quoting *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985)); *accord Lerma*, 543 S.W.3d at 191. To determine whether a reasonable officer could have believed that a detained individual might possess a weapon and the officer's safety might be at risk, courts have considered factors such as the officer's relative isolation during the encounter, whether the frisk occurred during a roadside stop, the detained individual's clothing, the detained individual's behavior, the area in which the encounter occurred, the time of night, and frequency of criminal conduct in the area. *See Michigan v. Long*, 463 U.S. 1032, 1047–50 (1983) (noting roadside context and rural location); *Lerma*, 543 S.W.3d at 192 (noting roadside context, isolation, and behavior); *Griffin v. State*, 215 S.W.3d 403, 409 (Tex. Crim. App. 2006) (noting criminal history and nervous behavior);

13

*O'Hara*, 27 S.W.3d at 553–55 (noting isolation and rural location); *Elliot v. State*, 548 S.W.3d 121, 127 (Tex. App.—Fort Worth 2018, pet. ref'd) (noting nervous behavior, bulges in clothing, and tendency to carry weapons); *Furr*, 499 S.W.3d at 880–81 (considering information from anonymous tip and "high drug, high crime" area in which frisk occurred, in addition to other factors); *see also McKellar v. State*, No. 07-06-00451-CR, 2007 WL 2262903, at *2 (Tex. App.—Amarillo Aug. 8, 2017, no pet.) (mem. op., not designated for publication) (considering time of night, in addition to other factors); *Rodriguez v. State*, No. 03-03-00140-CR, 2003 WL 22249714, at *5 (Tex. App.—Austin Oct. 2, 2003, no pet.) (mem. op., not designated for publication) (considering time of night and frequency of criminal conduct in the area, in addition to other factors).

## B.    Analysis

The State argues that Officer Gutierrez could have reasonably believed that Rodriguez possessed a weapon and that his safety might be in danger because: (1) Officer Gutierrez was alone; (2) the stop occurred in a high-crime area; (3) the stop was in the middle of the night; and (4) Officer Gutierrez had previously been assaulted in similar circumstances.

The Texas Court of Criminal Appeals has recognized that an officer's solitude during a traffic stop may contribute to an objectively reasonable concern for the officer's safety. *O'Hara*, 27 S.W.3d at 553–55 (upholding frisk because, among other considerations, the officer was alone); *Rodriguez*, 2003 WL 22249714, at *5 (same); *see also Seymore*, 2021 WL 2252751, at *6. Here, it is undisputed that Officer Gutierrez was patrolling alone. Furthermore, Officer Gutierrez testified that the area was known for drug trafficking and crime. Officer Gutierrez explained that he had patrolled the area for drug

related activity and crimes. The Texas Court of Criminal Appeals has also recognized that the location in which a stop takes place is a relevant factor in determining whether a pat down is justified. *See Furr*, 499 S.W.3d at 881.

Considering all of the factors discussed, we agree with the State that a reasonably prudent officer in Officer Gutierrez's position would have been warranted in believing that his safety was in danger. *See id.* Accordingly, we hold that the trial court did not err in concluding that Officer Gutierrez was objectively justified in patting down Rodriguez for weapons.

As shown on the dash camera video, which was admitted as evidence at the motion to suppress hearing, once the pat down was conducted and a knife was located and removed from Rodriguez's pocket, Officer Gutierrez, while manipulating one of Rodriguez's pockets from the outside, asked Rodriguez for consent to search. Rodriguez did not immediately consent, but when Officer Gutierrez told him it was a "yes or no" question, Rodriguez consented, saying "go ahead."

Rodriguez argued in his motion to suppress and now on appeal that his consent was coerced. Rodriguez states that Officer Gutierrez was "standing closely behind Rodriguez with his arms around Rodriguez, who he had physically contained." Rodriguez couples the position of Officer Gutierrez with Rodriguez's hesitation to consent to argue that he was coerced to give his consent. Specifically, he argues that at that point, consent was "moot" because the search was already being conducted.

To show that a defendant's consent to a search was constitutional, the State is required to prove the voluntariness of the consent by clear and convincing evidence, and the trial court must look at the totality of the circumstances surrounding the statement of

consent in order to determine whether that consent was given voluntarily. *See Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). Reviewing the record most favorable to the trial court's ruling, we find that the State met its burden of demonstrating by clear and convincing evidence that Rodriguez consented to the search. While Officer Gutierrez was positioned directly behind Rodriguez at the time, Rodriguez was not under arrest, and Officer Gutierrez informed him that his consent was a "yes or no" question, thus making Rodriguez aware that he could refuse. Furthermore, the "hesitation" discussed by Rodriguez amounted to mere seconds where he first stated that he did not have anything illegal in his possession before telling Officer Gutierrez to "go ahead" with the search. When he told Officer Gutierrez to "go ahead," he was indicating his consent to the search. *See McAllister v. State*, 34 S.W.3d 346, 351 (Tex. App.—Texarkana, Dec. 8, 2020, pet. ref'd). Accordingly, the trial court did not err in denying Rodriguez's motion to suppress on this basis. Rodriguez's second issue is overruled.

## IV. CONCLUSION

The trial court's judgment is affirmed.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
8th day of August, 2024.